**Herbert A. STANWOOD, III, Plaintiff,**

v.

**Garland J. WELCH, Defendant.**

**Civil Action No. 95–283.**

United States District Court,
D. Columbia.

Oct. 17, 1995.

Neal L. Thomas, Washington, D.C., for Plaintiff.

Cheryl D. Stein, Washington, D.C., for Defendant.

### Memorandum

HAROLD H. GREENE, District Judge.

Plaintiff, Herbert A. Stanwood, III ("Stanwood"), initiated this action against Garland J. Welch ("Welch"), alleging a breach of a May 18, 1994 real estate option contract under which Stanwood had the option to sell a commercial warehouse property to Welch for $300,000, provided that he satisfy certain stated conditions. Before the court is plaintiff's motion for summary judgment.

There are essentially four issues in dispute between the parties. First, whether there was a legally binding contract between the parties. Second, if there was a valid contact, did Plaintiff Stanwood satisfy the conditions precedent to invoking Welch's obligation to purchase the property. Third, if Stanwood did not satisfy the conditions precedent, was he excused from such by defendant's alleged anticipatory repudiation of the contract. Finally, whether, and in what amount, damages should be awarded.

For the reasons set out below, the Court denies plaintiff's motion for summary judgment.

## I

### Background [1]

From the late 1970's until mid–1993, Plaintiff Stanwood managed a family-owned business operating under the corporate name of Capitol Hill Service Center, Inc. ("CHSCI"). CHSCI operated a gas station and owned a commercial warehouse property at 1323 E Street, S.E. (the "Property").

---

1. Stanwood contends that since defendant Welch has failed to provide a separate concise statement of disputed material facts, pursuant to Local Rule 108(h), the Court should consider Plaintiff's Statement of Material Facts As to Which There is No Genuine Issue to be conceded. The Court believes that such action would not be appropriate in this case. First, Plaintiff himself has directed the Court's attention to parts of the record which directly contradict his Statement of Material Facts As to Which There is No Genuine Issue. In addition, the defendant did file an affidavit with his Opposition to Plaintiff's Motion for Summary Judgment. Moreover, Plaintiff has not provided a persuasive argument; he simply mentioned the point in a footnote in his Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment.

Defendant Welch is President of Welch & Son Rite–Way Auto, Inc. ("Welch & Son"). Welch & Son leased the Property from CHSCI for its automobile body repair business from 1989 until February 1994. In the spring of 1993, Welch offered to purchase the Property from CHSCI for $325,000. CHSCI never responded, in part because a dispute had arose regarding the ownership of CHSCI.

The CHSCI ownership dispute resulted in a 1993 action in the District of Columbia Superior Court between Stanwood and several members of his wife's family. During the course of the Superior Court litigation, Stanwood received a settlement offer under which he would get title to the Property subject to the existing mortgage.

As the Superior Court settlement negotiations progressed, Stanwood asked Welch whether he would buy the Property from him for $300,000 if he were to obtain title to it. Welch agreed. Stanwood's attorney wrote out an agreement (the "Agreement") setting out the terms of the sale for Stanwood and Welch to sign. The Agreement provided that in consideration of $10 paid to Welch, Welch promised to purchase the Property for $300,000 if (1) Stanwood tendered a valid deed to the Property within 180 days of the agreement and, (2) at the time of tender the Property was in substantially the same condition as it was on May 17, 1994.

Stanwood brought two copies of the Agreement to Welch, Welch signed the Agreement, and Stanwood handed Welch a check for $10.00 drawn on his personal account at National Capital Bank. The parties dispute whether Welch read the Agreement before signing it. Stanwood claims that Welch did read the Agreement.

Welch claims that he told Stanwood that he did not have time to read the papers, and that in response Stanwood stated that the papers concerned the potential sale of the building and he should just sign them. Welch claims that when he signed the papers he stated that the sale price would be determined by an appraisal. Welch also claims that he asked Stanwood what the check was for, and when Stanwood stated that it was for signing the Agreement, he unsuccessfully

attempted to return the check to Stanwood. At no time has Welch cashed the check. Welch claims that at no time did he believe he was signing a contract for the sale of the building. He claims that he did not think the Agreement was a contract even when he later read it. Welch did, however, apply for a loan with Signet Bank in order to be able to purchase the property.

Stanwood settled the Superior Court case, and accordingly received title to the Property on July 29, 1994. Stanwood's attorney signed a stipulation of dismissal with prejudice of the Superior Court case, and Stanwood signed a note in the amount of $126,000 and a deed of trust that secured the note with the Property.

The ensuing events are the subject of much dispute. Stanwood claims that he informed Welch that he had obtained title to the Property, and after some failed attempts to meet in person, the two spoke on the phone. Stanwood claims that during this conversation Welch stated that he did not intend to purchase the Property, and did not care if the two had an agreement.

Welch claims that this conversation never took place. Instead, Welch asserts that Stanwood came to his shop a few days after their first scheduled meeting. Welch claims that during this meeting he told Stanwood that he was still waiting for a response to his loan application, and was not in a position to proceed until the loan was approved.

Stanwood agrees that this meeting took place, but claims that during the meeting Welch stated that he would not purchase the Property because the Property's roof leaked. Stanwood claims that he offered to reduce the price to $290,000 if they could go to settlement right away, and that Welch agreed. Stanwood alleges that he gave Welch an unsigned sales contract embodying these terms, but that Welch never returned a signed copy to him.

Welch claims that at no point in August did he state that he would not purchase the Property. He asserts that he made no statement about the matter other than to state that he would be happy to buy the Property for the appraised value.

During frequent discussions between the two men, Welch often told Stanwood that the loan process would be complete by October 26, 1994. On that date Stanwood hand-delivered a letter to Welch, reconfirming the sale price of $300,000.

In late October 1994, Welch received a response from Signet Bank informing him that the appraised value of the building was $245,000. The bank said that it would finance Welch's purchase with a loan of 75 percent of the value of the building. Welch offered to buy the building from Stanwood for $245,000.

In late November, Stanwood called Welch. Welch again stated that he would pay only $245,000 for the Property, and informed Stanwood that an environmental survey of the Property revealed that the Property contained asbestos.

Not only are the two parties in disagreement about events from August 1994 to November 1994, but they are also in disagreement as to the condition of the Property at the time of Stanwood's offers to tender the deed.

Stanwood claims that he visited the property on several occasions in the spring of 1994 and in the fall of 1994, and that there was no significant deterioration in the condition of the Property during that period. In contrast, Welch claims that he visited the Property on a regular basis during the relevant time period, and that the Property was not in substantially the same condition at the time of tender as it was on May 17, 1994. Welch claims that the leaks in the roof had worsened, and as a result the floor had been damaged.

In December 1994, Stanwood listed the Property for sale. He recently agreed in principle to sell the property for $190,000. No contract has been finalized.

## II

The Court has diversity jurisdiction over this case. 28 U.S.C. § 1331. Plaintiff Stan-

wood is a citizen of the District of Columbia, Defendant Welch is a citizen of Virginia, and the amount in controversy, exclusive of interest and costs, exceeds $50,000.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

The party moving for summary judgment must show that there are no genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Once the moving party has met this burden, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (internal citations omitted). Mere allegations or denials in the non-moving party's pleading are not sufficient. Fed.R.Civ.P. 56(e).

In ruling on a summary judgment motion, the Court must assess the factual record by assuming "the truth of the non-movant's evidence, and [must] draw all justifiable inferences in that party's favor." *Bayer v. United States Dep't of Treasury*, 956 F.2d 330, 333 (D.C.Cir.1992). Summary judgment should be granted only where the evidence is such that a reasonable jury could not return a verdict for the non-moving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

## III

Whether the Agreement was a legally binding option contract must be determined by looking at the substantive contract law of the District of Columbia.[2] *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938) (absent a federal statutory or constitutional directive to the

---

**2.** As the parties concede by their silence on the issue, there is no choice of law issue: the contract was negotiated and entered into in the District of Columbia, performance was to take place in the District of Columbia, the Property was located in District of Columbia, and both parties' place of businesses are in the District of Columbia.

contrary, federal court must apply state law to the substantive issues before it).

An option contract in the real estate context is a contract in which an individual, in exchange for valuable consideration, agrees with another that the latter shall have the privilege of buying or selling the property involved within a specific time on the terms and conditions expressed in the contract. *West End Tenants Ass'n v. George Washington Univ.*, 640 A.2d 718, 728 (D.C. 1994). Although an option contract usually takes the form of an offer which has been kept open in exchange for consideration, an option contract can also take the form of a conditional contract to sell or buy. CORBIN ON CONTRACTS § 262 (1963).

The validity of an option contract is determined by ordinary contract rules. *Cf. Ammerman v. City Stores Company*, 394 F.2d 950, 954 (D.C.Cir.1968) (option is itself a contract). While Plaintiff Stanwood argues that there was a valid option contract, Defendant Welch contends that there was no mutuality, no offer, no acceptance, and no consideration, and thus no binding contract.

It is the general rule that one who signs a contract has a duty to read it, and is bound by its provisions if he had the opportunity to read and understand it. *McNulty v. Medical Service of the District of Columbia*, 189 A.2d 125, 128 (D.C.1963); *Hollywood Credit Clothing Co., Inc. v. Gibson*, 188 A.2d 348, 349 (D.C.1963). This is true even if a party thinks that what he is signing is not a contract. *See Interdonato v. Interdonato*, 521 A.2d 1124, 1129, 1133 (D.C.1987) (after having opportunity to read and understand it, party who signs a contract is bound thereby, even though he did not read it and thought it was simply a receipt for money received, unless he could show fraud or misrepresentations). However, another rule requires mutual assent or agreement as an essential element of a contract; and a contract in form may be avoided by a showing that assent was obtained by fraud or even misrepresentations falling short of fraud. If it is shown that the minds of the parties

did not meet honestly and fairly, without mistake or mutual misunderstanding, upon all essential points involved, there is no contract.

*Hollywood Credit Clothing Co., Inc. v. Gibson*, 188 A.2d at 349 (internal citations omitted).

The record before the Court, when considered in the light most favorable to defendant, shows that there is a genuine issues of material fact as to whether the defendant had an opportunity to read and understand the Agreement before he signed it. Defendant's affidavit alleges that when plaintiff approached defendant with the Agreement at defendant's place of business, defendant was busy with two customers, and plaintiff interrupted defendant's work. Moreover, defendant claims that when he told plaintiff that he was busy and did not have time to read the Agreement, plaintiff allegedly told defendant that the Agreement simply concerned the potential sale of the building and that he should just go ahead and sign it. Defendant claims that it was not until after plaintiff made these alleged representations that he signed the Agreement. On this record, the Court cannot determine as a matter of law that the defendant had the opportunity to read and understand the Agreement.

There is also a genuine issue of material fact evident in the record before the Court which touches upon whether the Agreement was the product of mutual assent, or whether it was the result of fraud or misrepresentations by plaintiff. Welch's August 30, 1995 affidavit suggests that he signed the Agreement because of Stanwood's alleged misrepresentations. Welch has failed, however, to explicitly plead fraud or misrepresentation as a defense in either his Amended Answer or his Opposition to Plaintiff's Motion for Summary Judgment. Federal Rule of Civil Procedure 8(c) states that "[i]n pleading to a preceding pleading, a party shall set forth affirmatively ... fraud, ... and any other matter constituting an avoidance or affirmative defense." FED.R.CIV.P. 8(c).[3] Moreover, Rule 9(b) states that in "all

---

**3.** While a court sitting in diversity jurisdiction must apply state substantive law, if there is a

averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." FED.R.CIV.P. 9(c).

■ While failure to plead an affirmative defense generally results in the waiver of that defense and its exclusion from the case, *Camalier & Buckley–Madison, Inc. v. Madison Hotel, Inc.*, 513 F.2d 407, 420 n. 92 (D.C.Cir.1975); *Flippo Construction Co., Inc. v. Mike Parks Diving Corp.*, 531 A.2d 263, 267 (D.C.1987), the rule is not applied automatically. *Carey Canada, Inc. v. California Union Ins. Co.*, 748 F.Supp. 8, 14 (D.D.C. 1990); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1278 (1990). At this point in the proceedings, the Court need not determine whether defendant has waived these defenses. Regardless of whether defendant is determined to have waived these defenses, there is still a genuine issue of material fact as to whether defendant had an opportunity to read and understand the Agreement, and thus as to whether the Agreement is a legally binding option contract.

### IV

■ Even were the Court to find that the Agreement was a legally binding option contract, summary judgment would not be appropriate because there is a genuine issue of material fact as to whether Plaintiff Stanwood satisfied the conditions precedent to invoking Welch's obligation to purchase the Property. The two conditions precedent to Welch's obligation were that Stanwood must have tendered a valid deed to the Property within 180 days of the Agreement, and at the time of tender the Property must have been in substantially the same condition as it was on May 17, 1994. As the moving party, plaintiff bears the burden of showing that no genuine issues of material fact exist as to whether he satisfied these conditions. *Adickes v. S.H. Kress & Co.*, 398 U.S. at 157, 90 S.Ct. at 1608.

Regarding the first condition, the tender of a valid deed, plaintiff asserts that the repeated offers he made to defendant to go to

settlement satisfied the condition. Actual manual tender is not required where it would be "useless ceremony" because the buyer was not prepared to proceed to sale. *See Burke v. Thomas J. Fisher & Co.*, 127 F.Supp. 1, 3 (D.D.C.1953), *aff'd*, 219 F.2d 767 (D.C.Cir.1955) (law does not require performance of a useless act when seller already has notice that purchaser is not ready to perform contract obligations). The record does not contain any evidence that defendant was at any time ready to go to sale for the amount stated in the Agreement. Thus, plaintiff's verbal tender was sufficient to meet the Agreement's first condition.

Regarding the second condition, that the Property be in substantially the same condition at the time of tender as it was on May 17, 1994, plaintiff has failed to show that no genuine issue of material fact exists. In fact, plaintiff has highlighted a genuine issue of material fact. In Plaintiff's Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, Stanwood directs this Court's attention to Defendant's Amended Answers to Interrogatories, Interrogatory # 3. In defendant's answer to this interrogatory, defendant states that the Property was not in substantially the same condition at the time of tender as it was on May 17, 1994, and claims personal knowledge that the leak in the roof of the building had become worse, and as a result of the leaks the floor had deteriorated. Plaintiff argues that the roof leaks were not substantially worse at the time of tender than on May 17, 1994. He asserts that the cost to repair the roof was only $550, and since $550 is only .18% of the sale price of $300,000, the Property was in substantially the same condition as it was on May 17, 1994. This Court need not determine whether the roof damage alone renders the Property not in substantially the same condition, because nowhere does Stanwood address the floor deterioration. Thus, there is a genuine issue of material fact as to whether the Property was in substantially the same condition at the time of tender as it was on May 17, 1994. The

Federal Rule of Civil Procedure on Point, that rule applies. *Hanna v. Plumer*, 380 U.S. 460, 471, 85 S.Ct. 1136, 1143, 14 L.Ed.2d 8 (1965).

jury will properly be asked to resolve this issue after hearing all the relevant evidence.

## V

Plaintiff's contention that his performance of the conditions precedent was excused by defendant's anticipatory breach of the contract also cannot be decided by the Court on Plaintiff's Motion for Summary Judgment, even were the Court to find that the Agreement was a legally binding option contract, because there remain genuine issues of material fact.

An anticipatory breach occurs when one party to a contract communicates "by word or conduct, unequivocally and positively its intention not to perform." *Order of AHEPA v. Travel Consultants, Inc.,* 367 A.2d 119, 125 (D.C.1976). A party claiming anticipatory repudiation must show that but for the repudiation, he would have been ready, willing, and able to perform his obligations under the contract. *See Burke v. Thomas J. Fisher & Co.,* 127 F.Supp. at 3 (when facts showed seller ready, willing, and able to perform his part of contract, and purchaser was aware of seller's disposition, seller's performance of condition excused by purchaser's breach); RESTATEMENT (SECOND) OF CONTRACTS § 255 cmt. a (1979) ("repudiation must contribute materially to the non-occurrence of the condition, and if the condition would not have occurred in any event, its non-occurrence is not excused").

While the evidence presented shows that by November 1994 defendant had unequivocally communicated his intent not to pay the $300,000 purchase price, Stanwood has presented no evidence showing that, but for defendant's repudiation of the contract, he would have been able to tender the Property in substantially the same condition as it was on May 17, 1994. Although Stanwood does claim that he would have been able to fix the roof leaks, he nowhere addresses the problem of the floor deterioration.

As this Court does not know whether the roof and floor problems rendered the Property so that it was not in substantially the same condition at the time of tender as it was in on May 17, 1994, nor whether plaintiff could have fixed the problems within the 180 day period, summary judgment on this issue would be inappropriate even if the Court were to find as a matter of law that there was a legally binding option contract.

## VI

Finally, Plaintiff Stanwood has moved for summary judgment on the issue of damages. Since there are genuine issues of material fact as to whether there was a legally binding option contract between the parties, as well as to if or when defendant breached the contract, it is inappropriate for the Court to address the issue of damages. The jury must determine if and when a breach of contract occurred, and calculate damages accordingly.

## VII

In sum, due to the aforementioned findings Plaintiff's Motion for Summary Judgment will be denied. An Order is being issued contemporaneously herewith.