Iris **RICHARD** et al., **Plaintiffs,**

v.

**BELL ATLANTIC CORP. et al., Defendants.**

Renee **Arrington** et al., **Plaintiffs,**

v.

**Bell Atlantic Corp. et al., Defendants.**

**Civil Action Nos. 96–2168 (RMU), 99–2380 (RMU).**

United States District Court, District of Columbia.

Sept. 7, 2001.

---

John W. Hermina, George W. Hermnia, Hannibal G. Kemerer, Hermina Law Group, Laurel, MD, for plaintiffs.

Vincent H. Cohen, Harry T. Jones, Jr., Hogan & Hartson, LLP, Washington, DC, for defendants.

*MEMORANDUM OPINION*

URBINA, District Judge.

### GRANTING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON ALL CLAIMS OF PLAINTIFF KAY YOUNG

## I. INTRODUCTION

These race-discrimination and retaliation cases began with 132 current and former employees of Bell Atlantic Corp. (now Verizon) suing their employer and its subsidiaries (collectively, "the defendants" or "Bell Atlantic") under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and 42 U.S.C. § 1981. Although the court has not consolidated these two cases, they have been mediated together and briefed together because of the similarity in claims, counsel, and parties.[1] Through the diligence and persistence of the parties, the lawyers, and an Alternative Dispute Resolution firm, only three plaintiffs remain in the case.

The defendants have filed motions for summary judgment against all three remaining plaintiffs. In this case, the defendants move for summary judgment on all claims of Kay Young ("the plaintiff" or "Ms. Young"). For the reasons that follow, the court will grant the defendants' motion for summary judgment.

## II. BACKGROUND

Kay Young began working for Bell Atlantic on June 15, 1970 as a directory-assistance operator. *See* Pl. Kay Young's Opp'n to Defs.' Mot. for Summ. J. ("Pl.'s Opp'n") at 2 (citing Ex. 1, Pl.'s Decl. ¶ 1); Mot. for Summ. J. at 5. While working for the company, Ms. Young was able to ob-

---

1. In the *Richard v. Bell Atlantic Corp.* case, Dkt. No. 96cv2168, there were originally 127 plaintiffs. In the *Arrington v. Bell Atlantic Corp.* case, Dkt. No. 99cv2380, there were originally 21 plaintiffs, all but five of whom were also plaintiffs in the Richard case. Thus, there were initially 132 total plaintiffs.

tain her Bachelor of Science degree in nursing. *See* Pl.'s Opp'n at 2. During her time at Bell Atlantic, Ms. Young said she "had a history of Union and Civil Rights activism." *See id.* (citing exhibit 1 ¶ 1).

On December 2, 1979, the company promoted Ms. Young to Frame Attendant, and on October 29, 1984, it promoted her to Central Office Technician ("COT"). *See* Mot. for Summ. J. at 5 (citing Young Dep. at 11–12). Bell Atlantic fired Ms. Young in July 1997. *See id.* at 5; Pl.'s Opp'n, Ex. 1, Pl.'s Decl. ¶ 1.

The parties disagree about the reason for the firing. Ms. Young believes that the company unfairly gave her a 20–day suspension on June 25, 1997 for failure to repay $750.00 to Bell Atlantic. *See* Pl.'s Opp'n, Ex. 1, Pl.'s Decl. ¶ 3. In her declaration, Ms. Young states that, "[t]he entire suspension process was flawed because a) I was not present, b) I was not given an opportunity to review the Employee Contact Memoranda ('ECM'), c) I was not asked if I understood the disciplinary action and reasons therefore, and d) I was not asked if I would like to submit a written explanation." *See id.* ¶ 5. Ms. Young also claims that in or around April 1997, her "Caucasian second level manager, Dan Hall, limited my keycard access to other floors at the Fairview Park Drive work location," but that similarly situated white individuals including Jimmy Spangler, Dan Serafin, Joel Smith, K.L. Quinn, and Delores Hiles all continued to have keycard access to other floors. *See id.* ¶ 6.

Ms. Young also asserts that Bell Atlantic fired her for taking leave pursuant to the Family Medical Leave Act to care for her mother who was terminally ill with cancer. *See id.* ¶ 7. Moreover, she maintains that she did take the Business Management Assessment Test ("BMAT") on or about 1987, despite the company's claim that she never sat for the test. *See id.* ¶ 13. Last-

ly, Ms. Young lists—without offering any evidence in support—31 white colleagues who were also COTs who "had more severe attendance deficiencies than I did and were not terminated." *See id.* ¶ 15.

Firing back with a section entitled "Young's History of Absenteeism and Misconduct," Bell Atlantic characterizes Ms. Young as an employee with an extremely poor work record. *See* Mot. for Summ. J. at 5–10. "Since as far back as 1991, Young has engaged in a pattern of excessive absenteeism," the company states. *See id.* at 5. On March 7, 1991, the company suspended her for five days for being absent without permission, misrepresenting the absence, and submitting an inaccurate time report. *See id.* (citing Ex. 3, and noting that her suspension was upheld at arbitration. *See* Ex. 21.). In addition, the company declares that "Young's poor dependability not only led to discipline, but also affected the ratings she received on her performance appraisals. She received '[d]ependability' ratings of '[l]ess than satisfactory' for the 1991 appraisal year, '[u]nsatisfactory' for the 1993 appraisal year, and '[d]oes [n]ot [m]eet [r]equirements' for the 1994 appraisal year." *Id.* at 6.

According to Bell Atlantic, the plaintiff's absences became more pronounced in the last few months of her employment. The company states that she did not work one day in January 1997, and only worked 20 days between January 1, 1997, and her termination on July 19, 1997. *See* Mot. for Summ. J. at 6. Additionally, the defendants note that during the last 10 months of her employment, Ms. Young repeatedly failed to select a work tour, which the company required all technicians to do. *See id.* at 7–8.

Bell Atlantic also accuses Ms. Young of insubordination. The company notes that on October 3, 1996, it suspended her for five days for insubordination after she

worked three hours of unauthorized overtime in violation of her supervisor's instructions. *See* Mot. for Summ. J. at 8. In May 1997, she was the subject of two more disciplinary actions and a 10–day suspension for insubordination after failing to call the duty supervisor on May 10. *See id.*

Lastly, Bell Atlantic states that an additional reason for its decision to fire Ms. Young was her late payment of advances. In June 1996, she attended a training session for which she received a cash advance of $235.00. *See id.* at 8–9. On July 15, 1996, she repaid the advance with a check that was returned for insufficient funds. She did not repay the cash advance until April 14, 1997. *See id.* At that time, the company did not discipline Ms. Young but it formally warned her to pay bills on time. *See id.* Eleven days later, a supervisor gave Ms. Young $750.00 as an advance against sick pay for a period of absence. The supervisor told Ms. Young to repay the advance by May 15, 1997. *See id.* Ms. Young, however, was absent on May 15 and did not return to work until May 24, 1997. *See id.* at 9. Bell Atlantic says that her supervisor reminded Ms. Young on May 19 and 20, 1997, that she owed the company $750.00, and agreed to extend the deadline until Ms. Young returned from leave.

According to the defendant, when Ms. Young returned to work on May 24, she told her supervisor at a disciplinary meeting, which had been called to address her nonpayment of advances and excessive absenteeism, that she had the money in her purse, "but thereafter claimed that the money had been stolen on the METRO." *See* Mot. for Summ. J. at 10. By June 25, 1997, Ms. Young still had not repaid the funds and the company suspended her for 20 days. *See id.* The next day, while on suspension, Ms. Young improperly entered a work location and delivered a personal check to her supervisor, Bell Atlantic states. On July 14, however, the company learned that the check was returned twice for insufficient funds. *See id.* It then fired her on July 19, 1997 "as a result of this incident and her history of excessive absences, insubordination, and other misconduct." *See id.*

The defendants now move for summary judgment on all the claims of Ms. Young.

### III. ANALYSIS

#### A. Legal Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine what facts are "material," a court must look to the substantive law on which each claim rests. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *See id.* at 252, 106 S.Ct. 2505. To prevail on a motion for

summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *See id.*

 In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *See Greene v. Dalton*, 164 F.3d 671, 674 (D.C.Cir.1999). Rather, the nonmoving party "must come forward with specific facts" that would enable a reasonable jury to find in its favor. *See id.* at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted). Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879 (D.C.Cir. 1997); *see also Johnson v. Digital Equip. Corp.*, 836 F.Supp. 14, 18 (D.D.C.1993).

### B. The *McDonnell Douglas* Framework

To prevail on a claim of race discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The Court explained this scheme as follows:

First, the plaintiff has the burden of proving by the preponderance of the evidence a *prima facie* case of discrimination. Second, if the plaintiff succeeds in proving the *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.... The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 (citations omitted)).

 Thus, the plaintiff must first establish a prima-facie case of prohibited discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C.Cir.1998) (*en banc*); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). As a general matter, a prima-facie case of discriminatory denial of promotion based on race consists of the following elements: (1) the plaintiff is a member of a protected class; (2) the plaintiff applied for and was qualified for the position at issue; (3) despite the plaintiff's qualifications, the defendant rejected the plaintiff; and (4) the position was filled by a similarly qualified employee from outside the protected class. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817; *Bundy v. Jackson*, 641 F.2d 934, 951 (D.C.Cir. 1981).

 If the plaintiff succeeds in making a prima-facie case, the burden shifts to the employer to articulate a non-discriminatory reason for its action. The employ-

er's burden, however, is merely one of production. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. 1089. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* If the employer is successful, the burden shifts back to the plaintiff to show that the defendant's proffered reasons are pretextual and that unlawful discrimination was the real reason for the action. *See McDonnell Douglas*, 411 U.S. at 802–05, 93 S.Ct. 1817; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

■ The defendant's explanation of its legitimate reasons must be "clear and reasonably specific" so that the plaintiff is "afforded a full and fair opportunity to demonstrate pretext." *See Burdine*, 450 U.S. at 258, 101 S.Ct. 1089 (citation omitted). A subjective reason can be legally sufficient, legitimate, and nondiscriminatory if the defendant articulates a clear and reasonably specific factual basis on which it based its subjective opinion. *See id.* As the Eleventh Circuit has explained:

> [I]t might not be sufficient for a defendant employer to say it did not hire the plaintiff applicant simply because "I did not like his appearance" with no further explanation. However, if the defendant employer said, "I did not like his appearance because his hair was uncombed and he had dandruff all over his shoulders," or ... "because he came to the interview wearing short pants and a T-shirt," the defendant would have articulated a "clear and reasonably specific" basis for its subjective opinion—the applicant's bad (in the employer's view) appearance. That subjective reason would therefore be a legally sufficient, legitimate, nondis-

criminatory reason for not hiring the plaintiff applicant.

*Chapman v. AI Transport*, 229 F.3d 1012, 1034 (11th Cir.2000) (*en banc*).

■ Once the defendant carries its burden of articulating a "legitimate, non-discriminatory reason" for the employee's rejection, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but rather were a pretext for discrimination. *See McDonnell Douglas*, 411 U.S. at 802, 36 L.Ed.2d 668. "That is, the plaintiff may attempt to establish that he was the victim of intentional discrimination 'by showing that the employer's proffered explanation is unworthy of credence'" and that the plaintiff's membership in a protected class was the true reason for the employment action. *See Reeves*, 120 S.Ct. at 2106 (quoting *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1554 (D.C.Cir.1997).

Both the Supreme Court and the D.C. Circuit have held that the burden-shifting scheme becomes irrelevant once both parties have met the burdens discussed above. *See Reeves*, 120 S.Ct. at 2106; *Aka*, 156 F.3d at 1289. At that point, the relevant inquiry is whether there is sufficient evidence from which a reasonable trier of fact could find in favor of the plaintiff, although "the trier of fact may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom ... on the issue of whether the defendant's explanation is pretextual." *See Reeves*, 120 S.Ct. at 2106 (citing *Burdine*, 450 U.S at 255 n. 10, 101 S.Ct. 1089); *see also Aka*, 156 F.3d at 1290; *Mungin*, 116 F.3d at 1554. In *Aka*, the D.C. Circuit found that the plaintiff had presented no evidence directly suggesting discrimina-

tion, but instead presented evidence that the defendant's proffered justification was false. The *Aka* court ruled that simply casting doubt on the employer's proffered justification did not automatically enable the plaintiff to survive summary judgment. *See Aka,* 156 F.3d at 1290–91. Rather, "the plaintiff's attack on the employer's explanation must always be assessed in light of the total circumstances of the case." *Id.* at 1291.

In sum, once an employer has met its burden of advancing a nondiscriminatory reason for its actions, the focus of proceedings at summary judgment:

> will be on whether the jury could infer discrimination from the combination of (1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanation for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer) or any contrary evidence that may be available to the employer (such as evidence of a strong track record in equal opportunity employment).

*See Aka,* 156 F.3d at 1289.

In *Reeves,* the Supreme Court reaffirmed the principles set forth in *Aka.* Mandating a case-by-case approach, the Supreme Court instructed the district courts to examine a number of factors, including "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." *Reeves,* 120 S.Ct. at 2109; *see also Aka,* 156 F.3d at 1289.

Lastly, the D.C. Circuit has recognized that courts "may not 'second-guess' an employer's personnel decision absent demonstrably discriminatory motive." *Fischbach*

*v. D.C. Dep't of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996) (citing *Milton v. Weinberger,* 696 F.2d 94, 100 (D.C.Cir.1982)); *see Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1100 (D.C.Cir.1997); *Mungin,* 116 F.3d at 1556 (quoting *Fischbach,* 86 F.3d at 1183). "It is not enough . . . to disbelieve the employer; the fact finder must believe the plaintiff's explanation of intentional discrimination." *Reeves,* 120 S.Ct. at 2108 (citing *St. Mary's Honor Ctr.,* 509 U.S. at 519, 113 S.Ct. 2742).

## C. The Plaintiff's Claims

The plaintiff makes five allegations against the defendants: (1) discriminatory failure to promote; (2) discriminatory evaluation; (3) discriminatory termination; (4) hostile work environment; and (5) retaliation. Applying the above legal standards to the instant case, the court will grant the defendant's motion for summary judgment on all five counts.

### 1. Discriminatory Failure to Promote

■ Citing Title VII and 42 U.S.C. § 1981, the plaintiff alleges that the defendant did not promote her to Engineering Assistant and management on the basis of her race since "white employees were permitted to bypass the testing process and go into management." *See* Pl.'s Opp'n at 7. She challenges the defendants' contention that she did not take the BMAT test that the company required employees who sought promotions to take. *See id.* at 3. The plaintiff states that she took the test, but failed it, and that other white employees who took the test and also failed, still received a promotion. *See id.* In her declaration, the plaintiff states that she took the BMAT in or about 1987. *See* Pl.'s Opp'n, Young Decl. ¶ 13. Although the plaintiff lists three people who supposedly are "[w]itnesses to the fact that [she] took the test," she does not include any declara-

tions or affidavits from these potential witnesses to support her position. *See id.*

On a separate point, the plaintiff states, "[a]lthough I did not pass the BMAT I am aware that Joan Keller, who is white, also failed the test but was still promoted. Keller's mother was a third level manager at Bell Atlantic." *See id.* Lastly, the plaintiff claims that in 1984, the company promoted her to COT in Virginia instead of Washington, D.C. to "get rid of her with the foreknowledge that [she] would be terminated." *See* Mot. for Summ. J. at 11–12 (citing Ex. 27, Young's Answer to Defs.' Interrogatory No. 1).

The defendant correctly counters that Virginia's two-year statute of limitations renders the plaintiff's claim about the 1984 promotion to the Virginia office time-barred. *See Williams v. Enterprise Leasing Co.,* 911 F.Supp. 988, 998 (E.D.Va. 1995) (Virginia's two-year statute of limitations time-barred section 1981 claims). The Supreme Court has held that because section 1981 itself does not contain a statute-of-limitations period, state law on personal-injury claims determines these limitations periods. *See Goodman v. Lukens Steel Co.,* 482 U.S. 656, 660, 107 S.Ct. 2617, 96 L.Ed.2d 572 (1987); *Carney v. American Univ.,* 151 F.3d 1090, 1096 (D.C.Cir. 1998). Accordingly, Virginia's two-year statute-of-limitations provision applies and bars consideration of the 1984 promotion. *See Williams,* 911 F.Supp. at 998.

Responding to the other claim, the defendant declares that the plaintiff cannot establish a prima-facie case of discriminatory failure to promote "because she never took the tests that would have qualified her for promotion to the positions of either Engineering Assistant or Supervisor."

*See* Mot. for Summ. J. at 12. The defendant notes that the plaintiff's statement that she took the BMAT on or about 1987 "is not possible, because Bell Atlantic did not begin to use the BMAT until 1994." *See* Reply at 2.

In short, because the plaintiff offers nothing more than her own conclusory allegation that she did take the test in 1987 despite the more compelling evidence indicating that she could not have, the court determines that there is no genuine issue of material fact in dispute of this point. Accordingly, the plaintiff cannot demonstrate that she was qualified for the promotion at issue and fails to establish a prima-facie case of discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *Bundy,* 641 F.2d at 951.

While the plaintiff identifies Sharon Duckett as a similarly situated white employee who was promoted to engineering assistant, the defendant notes that Ms. Duckett was exempt from the testing requirement for engineering assistant because at the time of her promotion, Duckett worked as an engineering drawing clerk, a position in the same job family as engineering assistant. *See* Mot. for Summ. J. at 13 n. 46 (citing Kaiser Decl. ¶ 6). In her opposition, the plaintiff does not dispute this point. Thus, the court determines that the plaintiff and Ms. Duckett were not similarly situated.[2]

Furthermore, the plaintiff's identification of Joan Keller as a similarly situated white employee who was allegedly treated more favorably is also barred by Virginia's two-year statute-of-limitations period since Ms. Keller was promoted to management in 1989. Even assuming *arguendo* that

---

**2.** Although the plaintiff also claims that she trained Shirley Mullens, who was later promoted instead of her, Mullins resigned in December 1992. *See* Mot. for Summ. J. at 13 n.

46. Therefore, the court agrees with the defendants that any allegations regarding Ms. Mullens's promotion are also time-barred.

this claim could go forward, the plaintiff's own declaration would provide the defendant with a legitimate, nondiscriminatory (albeit not meritorious) reason for Ms. Keller's promotion: the plaintiff alleges that the defendants promoted Ms. Keller because of nepotism, which is not actionable under Title VII. For all these reasons, the court grants the defendant's motion on the discriminatory failure to promote count.

### 2. Discriminatory Evaluation

The plaintiff's second allegation is that the defendants discriminated against her by giving her performance appraisals from 1991 to 1997 in which she did not receive the highest possible overall rating of "Exceeds All Requirements." *See* Mot. for Summ. J. at 13 (citing Young Dep. at 24–43). Assuming *arguendo* that the plaintiff could demonstrate a prima-facie case of discrimination on this count, the defendant would still meet its burden of production by offering a legitimate, nondiscriminatory reason for the plaintiff's evaluations. That is, "Young's excessive absenteeism precluded her for receiving this ['Exceeds All Requirements'] rating on her 1991, 1993, or 1994 performance appraisal." *See* Mot. for Summ. J. at 13. As noted above in section III.B., once the defendants carry their burden, the plaintiff must present enough evidence of discriminatory animus to allow a jury to infer discrimination. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. In this case, the plaintiff falls well short of satisfying her burden. She offers scant evidence that would give the court reason to think that these appraisals were based on discriminatory animus toward her, rather than what the defendants characterize as her misconduct, insubordination, and excessive absenteeism.

### 3. Discriminatory Termination

Next, the plaintiff pleads that she was fired on July 19, 1997 on the basis of her race. For reasons similar to those outlined above, the court grants the defendants' motion for summary judgment on this point because the plaintiff cannot establish a prima-facie case of discriminatory termination. To demonstrate her prima-facie case, the plaintiff must show (1) that she was a member of a protected class, "(2) performance at or near the employer's legitimate expectations, (3) discharge, and (4) replacement by a person of equal or lesser ability who is not a member of a protected class or, alternatively, the position remains open after termination." *Neuren v. Adduci, Mastriani, Meeks & Schill,* 43 F.3d 1507, 1512 (D.C.Cir.1995). This plaintiff fails to demonstrate two of the four prongs. First, the plaintiff cannot show that she performed at or near the employer's legitimate expectations in light of her well-documented absenteeism, among other things. Second, she never points to any replacement "by a person of equal or lesser ability who is not a member of a protected class" or that her position remained open after the defendants fired her. *See id.* Accordingly, because the plaintiff has failed to demonstrate a prima-facie case of discriminatory termination, the court grants the defendants' motion for summary judgment on this claim.

### 4. Hostile Work Environment

The plaintiff alleges that the defendants created a hostile work environment in violation of Title VII by directing a racial slur at her with some frequency, by harassing her and accusing her of insubordination, by telling her to "pound sand," by scrutinizing the work of African–American Frame Attendants more closely than their white counterparts, by suspending her for insubordination, by employing a worker who sexually harassed her, and by one coworker (Carl Stanley) harassing her and

using a racial slur directed at her, after which her white supervisor failed to take action. *See* Mot. for Summ. J. at 14 (citing Amended Compl. ¶ 122).

### a. Legal Standard for a Hostile Work Environment Violation under Title VII

■ Title VII prohibits an employer from creating or condoning a discriminatorily hostile or abusive work environment. *See Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Title VII makes it unlawful for an employer to "discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or nation of origin." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court has made it clear that the language "terms, conditions, or privileges" is not limited to economic or tangible discrimination and may include psychological harm. *See Meritor,* 477 U.S. at 64, 106 S.Ct. 2399. In addition, the Court has held that "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (quotation omitted). On the other hand, conduct that does not create a hostile or abusive environment is beyond the purview of Title VII. *See id.* at 21, 114 S.Ct. 367.

■ To establish a claim of hostile work environment based on racial discrimination, a plaintiff must demonstrate "(1) that he or she suffered intentional discrimination because of race; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same race in that position; and (5) the existence of *respondeat superior* liability." *Aman v. Cort Furniture Rental Corp.,* 85 F.3d 1074, 1081 (3d Cir.1996).

■ The Supreme Court has held that a finding of a hostile work environment depends on the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance. *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787–88, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998); *Harris,* 510 U.S. at 23, 114 S.Ct. 367. Moreover, the harassment need not be racial in content to create a racially hostile work environment. *See Bowdré v. Richardson,* 131 F.Supp.2d 179, 187 (D.D.C.2001). Rather, it must be shown that "had the plaintiff [not been part of the protected class,] she would not have been treated in the same manner." *Aman,* 85 F.3d at 1083. The Supreme Court circumscribed the definition of a hostile work environment so that "[t]hese standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher,* 524 U.S. at 788, 118 S.Ct. 2275 (citations omitted).

### b. The Plaintiff Fails to Demonstrate a Hostile Work Environment

■ In this case, the plaintiff has failed to present sufficient evidence of a hostile work environment to survive summary judgment. Even assuming that all the plaintiff's allegations about her work environment were true, as the defendants correctly note, "[w]ith the exception of the incident with Stanley, Young's allegations are all time-barred by Virginia's two-year statute of limitations because Young admits that they allegedly occurred well before September 19, 1994." *See* Mot. for Summ. J. at 15 & n. 50. The plaintiffs filed their original complaint in this case on

September 19, 1996. As noted above, to show evidence of a hostile work environment, a plaintiff must show that the discrimination was "sufficiently severe or pervasive." *See Harris*, 510 U.S. at 22, 114 S.Ct. 367. In light of the fact that only the most recent of her hostile work environment allegations survives the statute of limitations, the court concludes that the plaintiff cannot demonstrate, as a matter of law, that the harassment she allegedly suffered was "sufficiently severe or pervasive" to amount to a hostile work environment. *See Barbour v. Browner*, 181 F.3d 1342, 1347–48 (D.C.Cir.1999).

### 5. Retaliation

■ Lastly, the plaintiff alleges that the defendants retaliated against her by suspending her, by threatening her with the loss of her job, and by firing her in the summer of 1997 after she filed this race-discrimination suit on or about January 27, 1997. *See* Pl.'s Opp'n at 9. Even assuming *arguendo* that the plaintiff could establish a prima-facie case of retaliation, the defendants have met their burden of offering a legitimate, nondiscriminatory reason for her termination: namely, what they characterized as her excessive absenteeism from work, her insubordination, and her repeated on-the-job misconduct. *See* Defs.' Reply at 6. And once again, the plaintiff fails to present sufficient evidence to allow a jury to infer that the defendants unlawfully retaliated against her. Accordingly, the court grants the defendants' motion for summary judgment on the retaliation claim.

### IV. CONCLUSION

For all these reasons, the court grants the defendants' motion for summary judgment on all claims of Kay Young.