Herbert ANZUETO, Plaintiff,

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, Defendant.

No. 00–CV–02829 (RJL).

United States District Court, District of Columbia.

March 31, 2004.

Herbert Anzueto, pro se, Woodbridge, VA.

Aaron Martin Nisenson, Colleen M. Leyrer, Eric Lee Siegel, Henrichsen & Siegel, P.L.L.C., Washington, DC, for Plaintiff.

Bruce P. Heppen, Washington, DC, for Defendant.

### MEMORANDUM OPINION AND ORDER

LEON, District Judge.

This case arises from a claim of employment discrimination filed by Herbert Anzueto against his employer, Washington Metropolitan Area Transit Authority ("WMATA"). Before the Court is WMATA's Motion for Summary Judgment. Upon consideration of the defendant's motion, the plaintiff's opposition and the entire record herein, the Court grants WMATA's motion and enters judgment for the defendant.

### BACKGROUND

On November 21, 2000, plaintiff filed a discrimination suit against his employer, WMATA, alleging that WMATA: (1) discriminated against him and similarly situated employees on the basis of national origin (Hispanic) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, ("Title VII"); (2) discriminated against him on the basis of his age in violation of the Age Discrimination in Employment, Act, 29 U.S.C. § 621, *et seq.*, ("ADEA"); and (3) retaliated against him for numerous protected complaints made during the course of his employment in violation of both Title VII and ADEA. Anzueto's initial complaint alleges a series of discriminatory actions taken by WMATA that have occurred since 1986. Compl. ¶¶ 7–35.

On June 15, 2001, Anzueto moved to amend his complaint to include additional plaintiffs and to define the class in order to meet the procedural requirements for a class action suit. Pls.' Mot. and Mem. of P. & A. in Supp. of Leave to File Am. Compl. at 1. WMATA opposed Anzueto's motion for leave to amend, arguing that Anzueto is precluded from certifying his proposed class because the certification of this class has already been denied in a prior lawsuit in this district before Judge Paul L. Friedman. WMATA's Opp'n to Mot. for Leave to Amend at 2. Additionally, defendant argued that the amendment would be inappropriate in any event because it would be futile. *Id.* at 2.

While the motion to amend was pending, WMATA offered the Early Retirement Incentive Program on March 20, 2003 to active WMATA employees who were currently enrolled in the WMATA Retirement Plan, and who would be 55 years or older and have at least ten (10) years of service under a WMATA sponsored retirement plan by June 30, 2003. P. & A. in Supp. of WMATA's Mot. for Summ. J. at 2. Anzueto was one of the individuals who received this information. *See* Pl.'s Opp'n to WMATA's Mot. for Summ. J. at 2. On May 20, 2003, Anzueto signed a document entitled Early Retirement Incentive Program Election and Waiver and Release ("Waiver"). By signing this Waiver, Anzueto agreed to "release and forever discharge WMATA, and its officers, directors, agents, and employees...from any and all grievances,

covenants, contracts...claims, demands, damages, actions, and causes of action of every kind, known or unknown, which arise out of, or are in any way related to, my employment relationship with WMATA..."[1] WMATA's Mot. for Summ. J., Ex. 1. The Waiver specifically addressed employment discrimination claims by stating:

> [T]his Waiver and Release includes, without limitation, any claim of employment discrimination (including any claim based on age, race, sex, religion, color, or national origin) or other rights arising under the Age Discrimination in Employment Act (the "ADEA"), 29 USC .§ 62 et reg. and Executive Order 11141; Title VII of the Civil Rights Act of 1964...and/or any other federal, state, municipal or local statute, regulation, rule or common law prohibiting employment discrimination or relating to conduct or events occurring prior to the execution of this Election and Waiver and Release.

*Id.* Subsequently, WMATA filed a Motion for Summary Judgment on October 31, 2003, arguing that the Waiver required Anzueto to release WMATA from all employment related claims. WMATA's Mot. for Summ. J. at 1. In plaintiff's opposition to WMATA's motion, he argues he did not knowingly waive his rights to these claims and therefore the Waiver is unenforceable.[2] Pl.'s Opp'n to WMATA's Mot. for Summ. J. at 1.

---

1.  Anzueto also states that WMATA should have communicated with Anzueto through his counsel regarding the retirement benefits package because it impacted the claims in this lawsuit. *See* Pl.'s Opp'n to WMATA's Mot. for Summ. J. at 3. However, plaintiff's counsel fails to cite any support for this argument. In WMATA's reply to plaintiff's opposition, it notes that legal rules of ethics do not prohibit an employer from discussing retirement with an employee, but rather the rules

only prohibit lawyers from discussing the subject of the suit with a party that is known to have representation. *See* WMATA's Reply to Pl.'s Opp'n to its Mot. for Summ. J. at 4 n. 2.

2.  Anzueto admits he did not read the document but states he was under the impression he was signing a document that would allow him to learn more information about the retirement benefits available to him. Pl.'s Opp'n to WMATA's Mot. for Summ. J. at 5.

## STANDARD OF REVIEW

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c); *see, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the initial burden of identifying the basis for its motion and identifying the relevant evidence that demonstrates the absence of a genuine issue of material fact. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548. A "genuine issue" is defined as "one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action." *Richard v. Bell Atlantic Corp.,* 164 F.Supp.2d 10, 15 (D.D.C.2001); *see Celotex Corp.* 477 U.S. at 322, 106 S.Ct. 2548. The nonmoving party must present specific facts to demonstrate there is a genuine issue for trial and cannot rely merely on allegations or denials to defeat a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Finally, when considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *See id.* at 255, 106 S.Ct. 2505.

## ANALYSIS

■ WMATA argues Anzueto waived his right to pursue his Title VII and ADEA claims when he signed the Waiver. Courts have previously held that releases are to be analyzed as ordinary contracts. *See Wolcott v. Ginsburg,* 697 F.Supp. 540, 544 (D.D.C., 1988). Therefore, the issue of whether Anzueto waived his rights to his Title VII claims must be analyzed under ordinary contract law. Anzueto's ADEA claims, however, must be analyzed separately under a statutory structure developed in the Older Workers Benefits Protection Act ("OWBPA"), which amended ADEA and provided a distinct analysis, separate from the general law of contracts, to be used in waivers of ADEA claims. *See* Older Workers Benefits Protection Act, Pub.L. No. 101–433, § 102, 104 Stat. 978 (1990) (codified at 29 U.S.C. § 626(f)); *see also Oubre v. Entergy Operations,* 522 U.S. 422, 426–7, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998) (stating that OWBPA establishes its own regime to assess the validity of ADEA waivers). Accordingly, the court addresses the two causes of action separately.

## Title VII Claim

■ When determining whether a contract is enforceable in this Circuit, courts look to the written language of the agreement to determine the rights and liabilities of the parties, regardless of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible to a clear understanding, or unless there is fraud, duress, or mutual mistake. *DSP Venture Group, Inc. v. Allen,* 830 A.2d 850, 852 (D.C.2003). Simply stated, the actual text of the document is critical to this evaluation. *See, e.g., Samman v. Wharton Econometric Fore–Casting Associates,* 577 F.Supp. 934, 935 (D.D.C.1984) (holding that a lack of subjective intent to release Title VII claims is insufficient to invalidate a release agreement given the unambiguous language of the agreement). Moreover, it is well established that a person has a duty to read a contract before he signs it. If he had the opportunity to read it, he is bound by its terms regardless of whether he thought he was signing an actual contract. *See Stanwood v. Welch,* 922 F.Supp. 635, 640 (D.D.C.1995). Accordingly, in the absence of ambiguous language not susceptible to a clear and definite understanding, or a mutual mis-

take by the parties, Anzueto is accountable for the waiver he executed, notwithstanding his claims of ignorance as to what he signed.[3] For the following reasons there was neither the mutual mistake nor ambiguity necessary to invalidate the waiver.

■ First, as to ambiguity, the language of the Waiver in this case is undeniable. Under the section that is entitled Waiver and Release of Claims, which appears at the top of the page in bold, capital and underlined letters, the document states, "I hearby release and forever discharge WMATA...from any and all grievances...contracts, agreements...claims, demands, damages, actions, and causes of action of every kind...which arise out of, or are in any way related to, my employ-

ment relationship with WMATA and the termination of that relationship." WMATA's Mot. for Summ. J., Ex. 1. In short, this language is very clear and the average person reading it would undoubtably be able to comprehend the consequences of signing such a document. Accordingly, ambiguous language is not dispositive in this case.

■ Furthermore, the facts of this case are such that they do not constitute a mutual mistake that could invalidate a legitimate contract.[4] A mutual mistake is one where both parties are mistaken as to a material fact that goes to the heart of the bargain. *Harbor Insurance Co. v. Stokes*, 45 F.3d 499, 501 (D.C.Cir.1995). This is not a case of mutual mistake be-

---

**3.** Anzueto argues that he did not know what he was signing, thus it was not a "knowing" waiver and is not enforceable. However, the fact that Anzueto thought he was actually signing something else, does not invalidate the Waiver. *See Samman*, 577 F.Supp. at 935 (stating that simply because an individual did not subjectively intend to release Title VII claims is not enough to invalidate a release agreement that contains unambiguous language). Anzueto had more than ample opportunity to read the document he signed. He received information in March 2003 that included a copy of the document he signed on May 20, 2003. Although he claims he thought he was signing a document that would allow him to receive information on retirement benefits, even a casual glance at the document would have alerted Anzueto to the fact that the document was actually the "Early Retirement Incentive Program Election and Waiver and Release." Indeed, these words appear in bold, capital letters, directly above the line where Anzueto had to print his name, Social Security Number and Employee Number. Moreover, on the same page there is a sentence that advises the reader to consult with an attorney before signing the election and release. Again, these words are in bold, capital letters. It is evident that if Anzueto had fulfilled his duty to read, as set forth in *Stanwood*, he would have seen that this was a waiver and release. *See Stanwood*, 922 F.Supp. at 640. His own negligence in

failing to perform this duty does not invalidate the Waiver.

**4.** If certain criteria are met, a unilateral mistake may void a contract. *DSP Venture Group*, 830 A.2d at 853 (stating that such criteria include when the effect of the mistake makes the enforcement of the contract unconscionable or that the other party either knew of the mistake or actually caused the mistake). The criterion most relevant to the current case is that the party seeking to void the contract did not bear the risk of the mistake. *See Harbor Insurance*, 45 F.3d at 499, 501 (D.C.Cir.1995). This jurisdiction has adopted the Restatement (Second) of Contracts § 154, which defines when a party bears the risk of a mistake. *See Id.* The second clause of Section 154 states that a party bears the risk when "he is aware, at the time the contract is made, that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient." *Id.* at 502 (quoting the Restatement (Second) of Contracts § 154(b)). Although Anzueto may have been mistaken as to what he was signing, this does not qualify as a unilateral mistake' capable of voiding the agreement. It appears Anzueto bore the risk of his mistake when he signed the Waiver, having only limited knowledge as to what was in that document, and thus he cannot claim that the Waiver is void due to a unilateral mistake.

cause WMATA was aware of the contents and the consequences of the Waiver; it is only Anzueto who claims he thought he was signing a document containing entirely different information.

In short, the unambiguous language used in the Waiver, combined with a clear absence of fraud, duress or mistake, leads the Court to conclude that the Waiver signed here is in fact a valid, enforceable contract. Therefore, Anzueto has waived his right to pursue his Title VII claims against WMATA.

**Age Discrimination in Employment Act**

█ Congress, by passing OWBPA, has specifically provided that an individual may not waive a right or claim under ADEA unless it is knowing and voluntary. *Gilmer v. Interstate/Johnson Lane Corporation*, 500 U.S. 20, 29 n. 3, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). Indeed it established a strict statutory structure for evaluating releases and waivers and imposed specific obligations that employers must adhere to if the Court is to construe the waiver as knowing and voluntary. *See* 29 U.S.C. § 626(f), *et seq.* (2004); *see also Oubre v. Entergy Operations*, 522 U.S. 422, 427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998). Those requirements include: (1) an ambiguity requirement to insure it is written in clearly undeniable terms, § 626(f)(1)(A); (2) an attorney consultation advisory warning requirement to insure people consider consulting with an attorney, § 626(f)(1)(E); (3) a reference to rights under ADEA requirement, § 626(f)(1)(B); (4) required reference to any additional consideration to which the individual is entitled, § 626(f)(1)(D); and (5) a required period of at least 45 days in which to consider the agreement before signing it and at least 7 days thereafter in which to revoke one's acceptance, § 626(f)(1)(F)-(G).

█ The Waiver satisfies all the requirements of OWBPA. Specially, this Waiver uses plain, unambiguous English, rather than confusing legal terms. It advises the individual in two places, using bold, capital letters, to consult with a lawyer before signing the document to insure a complete understanding of the consequences of agreeing to the Waiver. Furthermore, the document makes specific reference to age discrimination claims and clearly indicates that the Waiver releases the individual from any and all claims arising under the ADEA. Anzueto, by his own admission, received the information regarding this Waiver and the early retirement package in March, establishing that he had more than 45 days to consider the agreement before he signed it on May 20, 2003. Finally, the Waiver also states, on multiple pages, that the individual executing the agreement has seven (7) calendar days to revoke acceptance.

After evaluating the text of the Waiver and WMATA's administration of the agreement, the Court finds that the Waiver meets the strict statutory requirements under OWBPA and finds that Anzueto did voluntarily and knowingly waive his ADEA claims. Accordingly, the Court concludes that the Waiver is a valid contract and that Anzueto has agreed to release his claims against the defendant.

### CONCLUSION

Because a genuine issue as to a material fact does not exist in this case, summary judgment is appropriate. It is hereby

**ORDERED** that defendant's Motion for Summary Judgment is **GRANTED**; and it is further

**ORDERED** that judgment be entered in favor of the defendant and the case be **DISMISSED WITH PREJUDICE.**

**SO ORDERED.**